IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OURLINK, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-08-CV-0745-BD |
| | § | |
| CARY GOLDBERG, ET AL. | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM ORDER**

The sole unresolved issue in this protracted lawsuit is whether Wayne S. Ball and his law firm, Greenberg & Bass, had authority to represent Jerry Goldberg ("Jerry") and the Goldberg Family Trust ("the Trust"), to waive service of process, and to agree to submit the underlying dispute to binding arbitration in Texas. If either express or implied authority exists, the court will confirm a $5.45 million arbitration award against Jerry and the Trust. If Ball did not have the requisite authority, the court must vacate the arbitration award.

As it pertains to the issue of authority, the relevant facts are these: On May 1, 2008, plaintiff sued Jerry, the Trust, and Cary Goldberg ("Cary"), in Dallas federal court for fraud in connection with the sale of Reservation Center, Inc., ("RCI"), a company owned by the Goldbergs. In accordance with the federal rules, a Notice of Lawsuit and Request to Waive Service of a Summons was sent to each defendant by counsel for plaintiff.[1] Wayne S. Ball, an attorney with the California

---

[1] Rule 4(d) of the Federal Rules of Civil Procedure provides, in pertinent part:

> An individual, corporation, or association . . . has a duty to avoid unnecessary expenses of serving the summons. The plaintiff may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.

law firm of Greenberg & Bass, signed a waiver form on behalf of all defendants and filed the executed waiver with the court on June 10, 2008. Thereafter, Ball appeared in the federal lawsuit as counsel for defendants. On April 27, 2009, the attorneys filed a joint stipulation to submit the dispute to binding arbitration in Texas. The arbitration resulted in a final award in favor of plaintiff and against defendants, jointly and severally, for $3,535,785.26 in actual damages and prejudgment interest, $1,800,000.00 in punitive damages, and $120,730.25 in attorney's fees. After plaintiff filed a motion to confirm the arbitration award, Kenneth W. Biermacher, a Dallas attorney, entered an appearance as "substituted counsel" for Jerry and the Trust. Ball continued to represent Cary. Defendants, through their respective attorneys, then filed separate motions to vacate or modify the arbitration award. Cary argued that the award was procured by "undue means" and that the arbitrator exceeded his powers by awarding punitive damages and attorney's fees. Jerry maintained that he was never served with process in the federal lawsuit and that Ball was not authorized to represent him in this action, to waive service, or to stipulate to binding arbitration in Texas. The court confirmed the arbitration award against Cary, but determined that an evidentiary hearing was necessary to resolve contested issues of fact concerning Ball's authority to represent Jerry and Trust. *See OurLink, LLC v. Goldberg*, No. 3-08-CV-0745-BD, 2011 WL 9076 (N.D. Tex. Jan. 3, 2011). That hearing was held on January 21, 2011. The issue of Ball's authority has been fully briefed and argued by the parties, and this matter is ripe for determination.

Under Texas law, which provides the rule of decision in this diversity case,[2] a principal may be bound by the acts of his agent when the agent has actual or apparent authority to do those acts,

---

FED. R. CIV. P. 4(d)(1). If a defendant fails, without good cause, to sign and return a waiver of service requested by plaintiff, the court must require the defendant to pay all expenses incurred in making service, as well as reasonable costs and attorney's fees for any motion to collect those service expenses. *See* FED. R. CIV. P. 4(d)(2).

[2] Both parties rely on Texas law to support their respective positions on the issue of whether Ball was authorized to represent Jerry and the Trust in this litigation

or when the principal ratifies those acts. *See Schakosky v. Client Services, Inc.*, 634 F.Supp.2d 732, 735 (E.D. Tex. 2007) (citing Texas law). Actual authority includes both express and implied authority. *See Pasant v. Jackson Nat'l Life Ins. Co.*, 52 F.3d 94, 97 (5th Cir. 1995). Express authority exists "where the principal has made it clear to the agent that he wants the act under scrutiny to be done." *Id., quoting City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683 (Tex. App.-- San Antonio 1984, writ dism'd). Implied authority exists "where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized[.]" *Id., quoting Aguilar*, 670 S.W.2d at 683-84. Among the ways that implied authority may arise are: (1) from an indication by the principal that the agent possesses authority; (2) from being the necessary implication of an expressly authorized act; and (3) from a previous course of dealing. *Id.* (citing Texas cases). If an agent acts without authority, the principal can ratify the action by "retain[ing] the benefits of a transaction after he acquires full knowledge of the agent's unauthorized act." *Schakosky*, 634 F.Supp.2d at 736, *citing Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 342 (Tex. App.--Fort Worth 2003, pet. denied). The existence of an agency relationship is usually a question of fact or a mixed question of fact and law. *See Sunny Corral Management, LLC v. Zurich American Ins. Co.*, No. 3-08-CV-1104-M, 2010 WL 1993195 at *2 (N.D. Tex. Mar. 31, 2010), *rec. adopted*, 2010 WL 1983411 (N.D. Tex. May 11, 2010).

It is undisputed that Jerry never expressly authorized Ball or his law firm to represent him or the Trust in this litigation. To the contrary, testimony at the evidentiary hearing revealed that Ball and Jerry have communicated with each other only twice. (*See* Hrg. Tr. at 142-43, 144). The first communication occurred shortly before Jerry was deposed on September 18, 2009 -- almost 17 months after the lawsuit was filed. (*Id.* at 144). Ball spoke with Jerry a second time immediately prior to the arbitration hearing in December 2009. (*Id.* at 143). At no time during those two brief

conversations did Ball and Jerry discuss any matters relating to the issue of authority. (*Id.* at 143-46). Nor did they ever exchange letters, emails, or other correspondence on that subject -- or any other subject. (*Id.* at 144). The court therefore finds that Ball did not have *express* authority to represent Jerry and the Trust in this lawsuit.

Notwithstanding the lack of express authority, the evidence strongly supports a finding that Ball had *implied* authority to represent Jerry and the Trust. At the hearing, Jerry explained that he relied on his son, Cary, to handle almost all legal matters relating to their family-owned business, RCI. (*Id.* at 48-49, 129, 131). In particular, Jerry authorized Cary to find a law firm to represent him in connection with the sale of RCI. (*Id.* at 48, 64). When Cary settled on Greenberg & Bass, Jerry authorized him to retain the law firm and delegated to Cary the primary responsibility of communicating with the firm about the transaction. (*Id.* at 48-49). After plaintiff filed the instant lawsuit alleging fraud in connection with the sale of RCI, Jerry again turned to Cary to protect his interests. Jerry admitted that Cary "really handl[ed] everything that had to do with [the] lawsuit[.]" (*Id.* at 123-24). Indeed, whatever Jerry knew about the case came from Cary. (*Id.* at 124). Jerry said that he thought Cary hired David Fisher, another California lawyer who had done work for RCI in the past, to represent him in this litigation. (*Id.* at 130-31). When pressed by the court, Jerry explained exactly how this would have come about:

> Q. [BY THE COURT]: [Y]ou personally never asked Mr. Fisher to represent you in this case or in the arbitration?
>
> A. [BY JERRY]: Yeah, I never did.
>
> Q. But you thought he was going to after you found out you had been sued?
>
> A. That was my -- I assumed that he would.
>
> Q. And somebody had to have asked him to do that.

> A. Well, again, I don't know that they did.
>
> Q. Well, but you didn't ask him?
>
> A. No, I didn't really ask him.
>
> Q. Did you think that somebody else was going to ask him to represent you?
>
> A. No, but I thought my son would have.
>
> Q. So, you thought your son was going to ask him to represent both you and Cary in this lawsuit?
>
> A. Yeah.
>
> Q. And Cary would have been authorized to hire Mr. Fisher --
>
> A. Yes.
>
> Q. -- to represent you two?
>
> A. Absolutely.

(*Id.* at 133-34). There is no evidence to suggest that Cary -- who was handling this litigation for Jerry and was authorized to hire counsel to represent him -- was prohibited from hiring Ball or his law firm. That Jerry "thought" Cary would hire a different lawyer has no bearing on the issue of authority. In view of this evidence, the court finds that Cary had implied authority, if not express authority, to hire an attorney of his choosing to represent Jerry and the Trust in this lawsuit. Greenberg & Bass -- the same firm that Jerry authorized Cary to hire to negotiate the sale of RCI -- were those attorneys.

Even if Jerry did not initially authorize Cary to hire Greenberg & Bass, he subsequently ratified that action. At times when Jerry reasonably should have been aware that Ball was acting as his attorney, he made no objection and impliedly consented to the representation. For example, Jerry did not object to when Ball announced on the record at Jerry's deposition that he was appearing on

behalf of "the Goldberg<u>s</u>." (*See* Plf. Hrg. Exh. 5 at 5) (emphasis added). Nor did Jerry object to the various emails and letters sent by his lawyer-sons, Lawrence Goldberg and Barry Goldberg, instructing Ball, on behalf of Jerry and the Trust, to take certain actions in this lawsuit. (*See* Plf. Hrg. Exhs. 7, 10, 12). After Jerry sued Ball and his law firm for professional negligence, Ball filed a motion to withdraw as counsel for Jerry and the Trust. (*See* Doc. #64). However, Jerry did not consent to the motion as required by the local rules of this court and, to this day, has never asked Ball to formally withdraw from the case.

Having determined that Ball was authorized to represent Jerry and the Trust in this litigation, it follows that Ball had the authority to waive service of process under the federal rules and agree to submit the underlying dispute to binding arbitration. As previously discussed, Cary was authorized by Jerry to handle "everything" related to this lawsuit. (*See* Hrg. Tr. at 123-24). Ball testified at the hearing that his firm obtained authority through Cary to waive service of process on behalf of all defendants. (*See id.* at 152). Cary also agreed to binding arbitration in Texas. (*See id.* at 174-75). To the extent express authorization of the client is necessary to submit a dispute to binding arbitration,[3] the court finds that Jerry expressly agreed to arbitration as part of the sale of RCI. The Acquisition Agreement signed by Jerry provides, in pertinent part:

> Except as otherwise provided in this Agreement or in the relevant Operative Document, any controversy, dispute, or claim arising out of or relating to this Agreement . . . or the performance or breach thereof, shall be settled according to the following procedures.

\* \* \* \*

---

[3] Jerry cites *Blanton v. Womancare, Inc.*, 38 Cal.3d 396, 696 P.2d 645, 212 Cal.Rptr. 151 (Cal. 1985), for the proposition that a client is bound by an arbitration agreement signed by his attorney only if the client consented to or ratified the agreement. Even if California law governs this issue, *Blanton* can be distinguished on the facts. Unlike the instant case, where Jerry previously agreed to arbitrate any disputes arising out of the agreement to sell RCI, there was no pre-existing arbitration agreement in *Blanton*. Rather, the attorney in that case agreed, on behalf of the client, to arbitrate a medical malpractice case after the lawsuit was filed. *Id.*, 696 P.2d at 647. In view of this important distinction, *Blanton* is not persuasive, much less controlling, authority.

<blockquote>
Arbitration. Any matter not settled among the parties by mediation shall be submitted to JAMS/Endispute, Inc. for binding arbitration in San Francisco, California.
</blockquote>

(Plf. Hrg. Exh. 8 at 29-30, ¶¶ 8.2). Had Ball not stipulated to arbitration, the court would have enforced the agreement and required the parties to submit to binding arbitration in San Francisco. That Ball agreed to arbitration in Texas has no effect on the central issue raised by Jerry -- whether a client must expressly agree to submit a dispute to arbitration because it involves waiving the substantial right of trial by jury. By agreeing to arbitrate "any controversy, dispute, or claim" arising out of the agreement to sell RCI, Jerry had already waived his right to a jury trial. The stipulation entered into by Ball on behalf of the defendants merely implemented Jerry's express agreement to arbitrate any disputes arising out of the subject matter of this lawsuit.

## CONCLUSION

For these reasons, plaintiff's motion to confirm the arbitration award against Jerry Goldberg, individually and as Trustee of the Goldberg Family Trust [Doc. #34], is granted. Jerry's cross-motion to vacate or modify the award [Doc. #45] is denied. Except for the filing fee, which will be taxed against defendants, jointly and severally, all costs are taxed against Jerry and the Trust. Counsel shall submit a proposed final judgment consistent with this opinion, and the prior opinion confirming the arbitration award against Cary Goldberg, by **March 11, 2011**. The proposed judgment must be approved as to form by counsel for all parties, and shall be electronically submitted to Kaplan_Orders@txnd.uscourts.gov.

SO ORDERED.

DATED: February 25, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE